Affirmed and Memorandum Opinion filed May 11, 2006









Affirmed and Memorandum Opinion filed May 11, 2006.

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-04-00371-CR

_______________

 

ANDRE WILLIAMS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 248th District Court

Harris County, Texas

Trial Court Cause No. 959,049

                                                                                                                                                

 

M E M O R A N D
U M   O P I N I O N








A jury found appellant, Andre Williams, guilty of murder and
assessed a life sentence and a $10,000 fine. 
In his first eleven issues, appellant contends the trial court erred by
interfering with his cross-examination of a witness, admitting certain
evidence, failing to give proper notice of pretrial hearings, denying funds to
hire experts, allowing allegedly improper jury argument, denying access to
evidence including allegedly exculpatory evidence, improperly responding to a
jury note, and showing bias towards him. 
In his twelfth and final issue, appellant challenges the factual
sufficiency of the evidence supporting the jury=s verdict.[1]  Appellant has also filed a motion to abate
which we ordered taken with the case.  We
deny the motion to abate and affirm the conviction.

I.  Background

On Sunday, August 17, 2003, appellant had been living with
his mother, Betty Baird (ABetty@), and his stepfather, Bill Baird (ABill@), in their Harris County home for
about a year and a half because he was unemployed and recently divorced.  Betty testified that on Sunday evening, while
the family sat in the living room, Bill expressed disapproval that appellant
had not found a job and his own place. 
Appellant replied AI=m sorry you feel that way@ and left the room.  Bill had difficulty walking due to recent
surgery.  While Betty helped him walk to
the kitchen, he said, ASo, now you=re going to kill me?@ 
As Betty turned to see whom Bill was addressing, she heard a Apopping@ noise, saw a Ared flash@ in Bill=s neck/collarbone area, and saw him
fall to the floor.  Betty noticed
appellant was back in the living room and was very agitated and yelling and
jumping up and down.  Appellant then ran
down the hall but quickly returned holding a gun.  As Betty lay on Bill attempting to shield
him, appellant shot Bill in the head. 
Betty ordered appellant to leave the home, so she could call 911 because
Bill was still alive.  Appellant shot
Bill again and said Ahe=s not alive now.@ 
Betty heard a total of five shots.








According to Betty, appellant then prevented her from calling
911 or leaving the home.  She asked if he
planned to kill her.  Appellant replied, AI=m not going to kill you, but I=m very highly agitated so don=t do anything to upset me.@ 
Appellant forced Betty into her bedroom, cut the bedroom telephone cord,
insisted she remain quiet, and gave her some medication which caused her to
sleep until the next morning.  On Monday
morning, appellant took Betty to the kitchen where he had Bill=s wallet and checkbook laying out and
made her write a check for $600. 
Otherwise, Betty remained confined to her bedroom until Wednesday
afternoon.  At some point, she heard a Agrinding@ noise and noticed the air
conditioner was turned extremely low. 
Appellant told her he would be running the machine for awhile and he had
to keep the house cold.  Betty also smelled
bleach and baby powder.  Appellant told
her he was cleaning the house and she might smell strong chemicals.  On Wednesday afternoon, Betty signaled
through a window for a neighbor to call the police.

The Harris County deputies who initially responded testified
that Betty met them at the front door, and she was frightened and distraught
and begged for help.  She said that she
was being held hostage and that appellant killed her husband and Agrinded him up.@ 
Appellant was not in the home when the officers arrived.  He was arrested in Harrison County, Texas
about a week after the murder when officers found him asleep in the truck he
had been driving.

The Harris County deputies who investigated the Bairds= home found most of Bill=s dismembered body parts, iced down
and placed in trash bags and Rubbermaid-type containers in various locations in
the home.  They also determined some
parts of the home had been thoroughly cleaned. 
They found a hand-held power saw identified as a ASawzall,@ the Sawzall blades, two hacksaws,
bleach, baby powder, cleaning wipes, and rubber gloves.  The State presented evidence that on the
Monday and Tuesday after the murder, appellant went to Home Depot and a grocery
store and purchased a Sawzall, Sawzall blades, cleaning and odor control
supplies, large containers, trash bags, a shovel, and ten bags of ice.  Additionally, in appellant=s bedroom, deputies found three
handguns, what appeared to be a homemade silencer, and hand-written notes
entitled APlausible Deniability@ which appear to outline a schedule
for obtaining supplies, dismembering the body, and cleaning the scene.








The medical examiners who performed Bill=s autopsy testified that he sustained
at least two fatal gunshot wounds: one bullet traveled through the breastbone,
aorta, and lung, and another bullet entered the back of his head and traveled
through the brain.  A deputy firearms
examiner testified that one bullet was fired from one gun found in appellant=s bedroom.  He testified that the other bullet could have
been fired from another gun found in appellant=s bedroom, but the bullet was too
deformed to make a definite conclusion.

Several other witnesses testified regarding incriminating
statements and behavior by appellant during the week between Bill=s murder and appellant=s arrest.  One of the Bairds= neighbors testified that when she
saw appellant on Tuesday, he had changed his appearance by shaving his
mustache, lightening his hair color, and cutting his hair.  Appellant=s friend, Sharon McDonald, testified
that on Wednesday or Thursday, he left her a message, stating he was
suicidal.  Later, when she spoke with him
personally, he said he had Adone something bad.@ 
He also said that he had been burying body parts, and when he returned
to the home, police had arrived, so he kept driving.  Appellant=s ex-wife, Deborah Jacobs, testified
that appellant called her on Wednesday and said something had happened to
Bill.  On Thursday, when she met
appellant in the Dallas area to get their dogs, he said he wanted to kill
himself.  Deborah called authorities and
gave them the license number for the truck appellant was driving.

II. 
Cross-Examination of Betty Baird








In his first issue, appellant contends the trial court
violated the confrontation clauses of the United States and Texas constitutions
by improperly interfering with his cross-examination of Betty.  The confrontation clauses guarantee a
defendant the right to cross‑examine witnesses.  See U.S.
Const. Amend. VI; Tex. Const.
Art. I, ' 10. 
However, the trial court has the discretion to limit the scope of cross‑examination
to avoid harassment, prejudice, confusion of the issues, endangering the
witness, and the injection of cumulative or collateral evidence.  Ho v. State, 171 S.W.3d 295, 304 (Tex.
App.CHouston [14th Dist.] 2005, pet. ref=d) (citing Delaware v. Van Arsdall,
475 U.S. 673, 679 (1986)).  We review a
trial court=s decision to limit cross‑examination
under an abuse of discretion standard.  Id.
(citing Love v. State, 861 S.W.2d 899, 903 (Tex. Crim. App. 1993)). 

First, appellant complains that the trial court continually
sustained the State=s objections, and thus, engaged in a Atag team@ effort with the State to disrupt his
cross-examination of Betty.  Appellant
lists numerous record references where the trial court allegedly Awrongfully@ sustained the State=s objections, but he does not explain
why the objections were improperly sustained. 
Without a showing that the trial court improperly sustained the
objections, we cannot conclude that the trial court improperly limited cross-examination
simply because it continually sustained objections.

Next, appellant complains that the trial court discontinued
his initial cross-examination of Betty and resumed it later, and, therefore,
broke the continuity while he was Achipping away@ at Betty=s credibility.  However, Texas Rule of Evidence 611 provides,
in pertinent part, that a trial court Ashall exercise reasonable control@ over the order of interrogating
witnesses to Amake the interrogation and
presentation effective for the ascertainment of the truth@ and Aprotect witnesses from harassment . .
. .@ 
Tex. R. Evid. 611(a).  The record reflects that the trial court
discontinued appellant=s initial cross-examination of Betty because after at least
four hours in one day, the seventy-three-year-old witness was Aawfully tired,@ shaky, and not feeling well.  The trial court allowed appellant to resume
the cross-examination when Betty returned five days later.  Considering Betty=s age and condition, the trial court
did not abuse its discretion by discontinuing the cross-examination and
resuming it later.








Finally, appellant contends the trial court improperly
questioned Betty, effectively serving as prosecutor and undermining appellant=s ability to defend himself.  However, in the instances cited, the trial
court actually assisted appellant by suggesting how to properly frame his
questions to avoid an objection or obtain a responsive answer.[2]  Therefore, these Aquestions@ did not undermine appellant=s ability to defend himself.  See Ross v. State, 800 S.W.2d
262, 265 (Tex. App.CHouston [14th Dist.] 1990, pet. ref=d) (finding no error in trial court=s asking witness a question during
defendant=s cross-examination to clarify
defendant=s questions because trial court did
not act as litigant or convey its opinion of the case).  Appellant=s first issue is overruled.

III. 
Admission of Evidence

In his second, fifth, and tenth issues, appellant argues the
trial court erred by admitting  certain
evidence.[3]  We review the trial court=s admission of evidence under an
abuse of discretion standard.  Torres
v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).  Unless the trial court=s ruling falls outside the zone of
reasonable disagreement, we will not disturb it.  Id.

A.        Dismemberment
Evidence in General

Appellant contends the trial court erred by generally
admitting evidence that he dismembered Bill=s body because it was irrelevant and
alternatively, any relevance was substantially outweighed by the danger of
unfair prejudice.[4]  See Tex.
R. Evid. 403.








1.         Relevancy

Appellant essentially contends that the dismemberment
evidence was irrelevant because it concerns an extraneous offenseCabuse of corpse.  Although evidence of other crimes, wrongs, or
acts is not admissible to prove a person=s character to show he acted in
conformity therewith, the evidence may be admissible if relevant for another
purpose, such as proof of motive, opportunity, intent, preparation, plan,
knowledge, identity, or absence of mistake or accident.  Tex.
R. Evid. 404(b).[5]  This list of exceptions is not
exclusive.  Prible v. State, 175
S.W.3d 724, 731 (Tex. Crim. App. 2005). 
One recognized exception is evidence of an extraneous offense tending to
show Aconsciousness of guilt.@ 
See Ransom v. State, 920 S.W.2d 288, 299 (Tex. Crim. App.
1996) (op. on rehearing); Torres v. State, 794 S.W.2d 596, 598B99 (Tex. App.C Austin 1990, no pet.).  Criminal acts designed to reduce the
likelihood of prosecution, conviction, or incarceration for the charged offense
are admissible under Rule 404(b) to show Aconsciousness of guilt.@ 
Ransom, 920 S.W.2d at 299. Specifically, attempts by the
defendant to suppress evidence are admissible to prove the defendant committed
the charged offense.  See Rodriguez
v. State, 577 S.W.2d 491, 492B93 (Tex. Crim. App. 1979); Torres,
794 S.W.2d at 598B99.








Here, appellant=s dismemberment of Bill=s body shows an attempt to conceal
evidence of the murder and avoid detection. 
ADismemberment of a person=s body after killing him is hardly
the action of an innocent accused, and evidence of such is probative of guilt.@  See Schexnider v. State, 943 S.W.2d 194,
202 (Tex. App.CBeaumont 1997, no pet.).  Thus, the dismemberment evidence was relevant
to prove appellant=s Aconsciousness of guilt@ with respect to Bill=s murder.  See id. (holding evidence that
defendant dismembered victim=s corpse after murder was admissible to show Aconsciousness of guilt@ and defendant=s attempt  to conceal his crime).  Accordingly, the trial court did not abuse
its discretion by finding the dismemberment evidence was relevant and
admissible under Rule 404(b).

2.         Rule 403

Appellant also contends the dismemberment evidence was
inadmissable under Texas Rule of Evidence 403 because it was unfairly
prejudicial.  Although relevant, evidence
may be excluded if its probative value is substantially outweighed by the
danger of unfair prejudice.  Tex. R. Evid. 403.  A trial court should consider the following
factors when conducting a Rule 403 Abalancing test@: (1) the probative value of the
evidence; (2) the potential to impress the jury in some irrational, yet
indelible, way; (3) the time needed to develop the evidence; and (4) the
proponent=s need for the evidence.  Erazo v. State, 144 S.W.3d 487, 489
(Tex. Crim. App. 2004); Mozon v. State, 991 S.W.2d 841, 847 (Tex.
Crim. App. 1999).








Here, the first, third, and fourth factors of the Rule 403 Abalancing test@ weigh in favor of
admissibility.  With respect to the first
factor, as we have discussed, the dismemberment evidence had probative value
because it demonstrated appellant=s attempts to conceal evidence of the
crime.  With respect to the third factor,
the State spent considerable time presenting evidence that appellant
dismembered the body.  However, much of
the evidence was circumstantial, such as appellant=s purchase of supplies and the
deputies= finding the supplies and body parts
in the home; thus, the State needed significant evidence to prove appellant
dismembered the body.  Further, the large
volume of evidence was necessary to show the lengths to which appellant went to
dismember the body, such as keeping his mother captive, purchasing supplies,
hiding various body parts in the home, and burying other body parts.

When addressing the fourth factor, we should answer three
sub-questions:  (1) does the proponent
have other available evidence to establish the fact of consequence that the
evidence is admissible to show?; (2) if so, how strong is that other evidence?;
(3) and is the fact of consequence related to an issue in dispute?  Erazo, 144 S.W.3d at 495B96. 
The State had other strong evidence to prove appellant murdered Bill
including Betty=s testimony.  However,
appellant suggested at trial that Betty murdered Bill.  Appellant and Betty were the only persons
present when Bill was murdered. 
Therefore, the State needed evidence that appellant dismembered the body
to prove appellant, not Betty, murdered Bill.

Only the second factor weighs somewhat in favor of
exclusion.  However, although the facts
of dismemberment are generally gruesome and would tend to leave an emotional
impression on the jury, this factor is not compelling enough to outweigh the
other factors.  Accordingly, the trial
court did not abuse its discretion by concluding that the probative value of
the dismemberment evidence was not substantially outweighed by the danger of
unfair prejudice.  See Schexnider,
943 S.W.2d at 202 (holding trial court did not abuse its discretion by
overruling defendant=s Rule 403 objection to evidence that he dismembered murder
victim=s corpse; although the general public
tends to have Arepulsion and horror@ toward such an offense, the evidence
refuted defendant=s claim that he acted in self-defense); see also Santellan
v. State, 939 S.W.2d 155, 169B70 (Tex. Crim. App. 1997) (holding
trial court did not abuse its discretion by overruling defendant=s Rule 403 objection to evidence that
he had sex with murder victim=s corpse; although the evidence would potentially affect jury
in an emotional way and State spent significant time on the subject, the State
had a vital need for the evidence to prove defendant=s intent to kidnap victim).








B.        Particular
Dismemberment Evidence

Appellant also challenges admission of the following items of
dismemberment evidence:

1.         APlausible Deniability@ Notes

Although appellant contends the APlausible Deniability@ notes were irrelevant, he offers no
reason other than arguing they concern dismemberment in general.[6]  Regardless, the APlausible Deniability@ notes were particularly
compelling.  The title alone is
significant.  Moreover, the notes appear
to outline a schedule for obtaining supplies, dismembering the body, and
cleaning the scene.[7]  Therefore, the notes demonstrate appellant
was so zealous to conceal evidence of the crime that he made a schedule for
doing so.  Accordingly, the trial court
did not abuse its discretion by finding the notes were relevant.

2.         The Sawzall








Appellant further contends the trial court improperly
admitted the Sawzall found in the Bairds= home because it was irrelevant;
however, he again offers no reason it was irrelevant other than arguing it
concerned dismemberment in general. 
Nonetheless, the Sawzall is clearly relevant considering the State
asserted that it was used to dismember the body.  In addition, appellant complains that the
State presented a live demonstration of a Sawzall while questioning a
deputy.   This Sawzall used for
demonstrative purposes was not the one found in the Bairds= home and was not admitted into
evidence.  Although appellant objected to
admission of dismemberment evidence, he did not object to the live
demonstration of this Sawzall. 
Therefore, he did not preserve error on this complaint.  See Tex.
R. App. P. 33.1(a).

3.         Photograph
of Severed Head

Appellant suggests the trial court should have excluded an
autopsy photograph of Bill=s severed head pursuant to Rule 403.  When determining whether the relevance of
photographs is substantially outweighed by the danger of unfair prejudice, we
consider additional factors including the number of photographs, their size,
their detail, whether they are in color or are black and white, whether they
are gruesome, whether any bodies are clothed or naked, and whether the body has
been altered by autopsy.  Erazo,
144 S.W.3d at 489; Hayes v. State, 85 S.W.3d 809, 815 (Tex. Crim. App.
2002).  In addition, autopsy photographs
are generally admissible unless they depict mutilation of the victim caused by
the autopsy itself.  Hayes, 85
S.W.3d at 816.

Here, these additional factors weigh in favor of the trial
court=s decision to admit the
photograph.  The copy of the photograph
in the appellate record is smallCthree by five inchesCand is black and white.[8]  Bill=s severed head is lying face-up on a
table, and there are cuts around the mouth area.  However, the photograph shows no alterations
made by the autopsy because the head was already severed and the mouth area was
already cut when the body was brought in for autopsy.  The photograph is gruesome, but no more
gruesome than the facts of the dismemberment itself.  See Sonnier v. State, 913
S.W.2d 511, 519 (Tex. Crim. App. 1995) (recognizing trial court does not err
merely by admitting gruesome photograph when the gruesomeness Aemanates from nothing more than what
the defendant has himself done.@).  Further, the trial
court noted that although the autopsy photographs showing Bill=s body parts were extreme, the State
limited the number of photographs it offered.








Moreover, with respect to the Rule 403 balancing test in
general, the trial court recognized that appellant had insinuated that Betty
murdered Bill and dismembered the body. 
The trial court stated that the autopsy photographs, including the
photograph of Bill=s severed head, showed that someone of Betty=s size and physical condition was not
capable of operating the Sawzall in a manner that would make the clean cuts
depicted in the photographs. 
Accordingly, although the photograph of the head is gruesome, the trial court
did not abuse its discretion by finding that its probative value was not
outweighed by the danger of unfair prejudice.

C.        Testimony Regarding a
Silencer

Appellant also contends the trial court improperly admitted
evidence of a Asilencer.@ At trial, Deputy James Lovett, who
investigated the offense, was asked about a photograph depicting an object
recovered from appellant=s bedroom.  The State
asked Deputy Lovett, AWhat did it appear to be?@ 
He responded, AAppeared to be a homemade silencer.@ 
Appellant made a Aspeculation@ objection to this question, which the trial court overruled.[9]  The trial court did not abuse its discretion
by finding the question did not call for Aspeculation@ considering Officer Lovett was asked
what the item Aappeared@ to beCnot what the item was.

D.        Confession/Suicide
Note








Appellant contends the trial court improperly admitted a
confession/suicide note  found in his
truck after his arrest.[10]   The note was admitted during the punishment
phase of the trialCnot during the guilt/innocence phase.  The only objection at trial that possibly
comports with a complaint on appeal is a Arelevancy@ objection.[11]  However, on appeal, appellant challenges only
the guilty verdictCnot his punishment. 
Thus, he offers no argument as to how the note was irrelevant to the
punishment determination or how he was harmed by admission of the note.  Consequently, he has waived appellate review
regarding admission of the note.  See Tex. R. App. P. 38.1(h) (requiring that
brief contain argument with appropriate citations to authorities and the record
); Cardenas v. State, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (finding
appellant waived appellate review of issue by failing to include argument and
authorities).

E.        Testimony
Regarding the Confession/Suicide Note

Appellant later seems to acknowledge that the
confession/suicide note was not admitted during the guilt/innocence phase, but
instead contends the trial court erred by admitting hearsay testimony regarding
the note during the guilt/innocence phase. 
Deborah Jacobs testified that when she met appellant in Dallas a few
days after the offense, he asked her for some paper and a pen to write a
suicide note.  However, at trial,
appellant did not object to this testimony, and, thus, has waived his complaint
that this testimony was hearsay.  See Tex. R. App. P. 33.1(a).[12]  We overrule appellant=s second, fifth, and tenth issues.

 

 

 








IV. 
Notice of Pretrial Hearings and Funds To Hire Experts

Although appellant=s third issue is couched in terms of Ajudicial bias@ and Apattern of prejudice,@ he repeats many of his other
complaints but also asserts the trial court did not give him adequate notice of
pretrial hearings and denied him funds to hire experts.

A.        Notice of
Pretrial Hearings

Appellant asserts the trial court did not give him ten-days
notice of the hearings on his pretrial motions, including his motions to
suppress, as required by article 28.01 of the Texas Code of Criminal
Procedure.  However, he misreads article
28.01.  Article 28.01 provides that a
trial court may set a pre‑trial hearing to consider certain motions,
including a motion to suppress.  Tex. Code Crim. Proc. Ann. art. 28.01, ' 1 (Vernon 1989).  Whether to hold a hearing on a pretrial
motion to suppress rests within the trial court=s discretion; it can instead elect to
address the admissibility of the evidence at issue during the trial after a
proper objection is lodged.  See
Calloway v. State, 743 S.W.2d 645, 649 (Tex. Crim. App. 1988).  However, when the trial court does set a
pretrial hearing, Aany such preliminary matters not raised or filed seven days
before the hearing will not thereafter be allowed to be raised or filed, except
by permission of the court for good cause shown;  provided that the defendant shall have
sufficient notice of such hearing to allow him not less than 10 days in which
to raise or file such preliminary matters.@  Tex. Code Crim. Proc. Ann. art. 28.01, ' 2 (Vernon 1989).  Article 28.01, section 2 does not require the
trial court to give ten days notice of every pretrial hearing.   See id.; Postell v. State, 693
S.W.2d 462, 465 (Tex. Crim. App. 1985); see also Sells v. State, 121
S.W.3d 748, 763 (Tex. Crim. App. 2003). 
Rather, article 28.01, section 2 provides that a defendant will not be
bound to the seven-day limitation for raising or filing motions unless he has
been accorded sufficient notice of the hearing to allow him at least ten days
in which to raise or file such motions.  See
Tex. Code Crim. Proc. Ann. art.
28.01, ' 2; Postell, 693 S.W.2d at
465; see also Sells, 121 S.W.3d at 763.








Here, appellant filed numerous pretrial motionsC sixty-eight, according to
appellant.  Just before trial started,
the trial court held two hearings and considered appellant=s motions in limine and several
motions to suppress.  There is no
indication the trial court refused to consider any other motions because they
were filed within seven days of the hearings; appellant filed most of his motions
more than seven days before the hearings. 
Rather, the record indicates the trial court simply exercised its
discretion to decline to hear most of appellant=s motions at that time and instructed
appellant that he needed to object as the evidence was offered during
trial.  Therefore, appellant has not
demonstrated that the trial court violated article 28.01.

B.        Funds to Hire
Experts

Appellant asserts the trial court denied him funds as an
indigent to hire experts, particularly a private detective to locate
witnesses.  However, the record refutes
this assertion.  In response to appellant=s motion, the trial court allowed
funds for an investigator and ordered that appellant be allowed to meet with
the investigator while in custody.  In
response to another motion, the trial court allowed funds for a psychiatric
expert.  Accordingly, we overrule
appellant=s third issue.

V. 
Jury Argument








In his fourth issue, appellant contends that the State made
improper jury argument in three instances: (1) an argument that the jury should
not be Aduped@ by appellant; (2) an argument that Amaybe he=d take care of his mother later@; and (3) operation of a Sawzall
during argument.[13]  However, appellant did not preserve error as
to these complaints.  To preserve error
regarding improper jury argument, a party must timely object and pursue his
objection to an adverse ruling.  Cockrell
v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).  With respect to the arguments that the jury
should not be Aduped@ and Amaybe he=d take care of his mother later,@ appellant did not object at all.  With respect to the Sawzall demonstration,
appellant stated AI object@ but provided no grounds and obtained no ruling.  Consequently, we overrule his fourth issue.

VI. 
Access To Evidence and Withholding of Evidence

Appellant=s sixth issue appears to be two-part: the trial court denied
him access to the evidence that was introduced at trial, and the State withheld
other allegedly exculpatory evidence. 

A.        Access to
Evidence








Although it is not clear what appellant means by Aaccess,@ he suggests he was not allowed to
inspect the evidence.  Article 39.14(a)
addresses discovery in a criminal case. 
The former version of article 39.14(a) applicable to this case provided
in pertinent part that A[u]pon motion of the defendant showing good cause . . . the
[trial court] may order the State before or during trial . . . to
produce and permit the inspection@ of non-privileged evidence.  Act of May 21, 1999, 76th Leg.,
R.S., ch. 578, 1999 Tex. Gen Laws 3118 (amended 1995) current version at Tex. Code Crim. Proc. Ann. art.
39.14(a) (Vernon Supp. 2005)) (emphasis added). 
Under former article 39.14(a), a defendant did not have a general right
to discovery of evidence in the State=s possession.  See Quinones v. State, 592 S.W.2d
933, 940 (Tex. Crim. App. 1980); Saldivar v. State, 980 S.W.2d 475, 496
(Tex. App.CHouston [14th Dist.] 1998, pet. ref=d). 
Rather, former article 39.14(a) provided limited discovery, independent
of the constitutional right of access to exculpatory evidence.  Saldivar, 980 S.W.2d at 496.  The decision on what was discoverable was
committed to the discretion of the trial court. 
See Quinones, 592 S.W.2d at 940.[14]  A trial court abused its discretion only if
it failed to permit discovery of evidence that was material to the accused=s defense.  See id. at 940B41.

Nonetheless, approximately two months before trial, the trial
court entered a ADiscovery Order@ allowing appellant discovery of
virtually all the State=s evidence.  The trial
court required the State to furnish some evidence to appellant, allow inspection
of some evidence before trial, and allow inspection of other evidence at the
time of trial.  Further, this discovery
order was entered on the same day that the trial court allowed appellant to
proceed pro se.  The court noted
on the discovery order that the State=s file had been open to appellant=s previous attorney through that
day.  Therefore, the trial court allowed
appellant more discovery than required at that time.

At another point, appellant suggests he was denied Aaccess@ to the evidence because he was not
allowed physical possession to obtain an Aindependent analysis.@ 
However, former and current article 39.14(a) provide[d] that A[n]othing in this Act shall authorize
the removal of such evidence from the possession of the State, and any
inspection shall be in the presence of a representative of the State.@ 
Act of May 21, 1999, 76th Leg., R.S., ch. 578, 1999 Tex. Gen
Laws 3118 (amended 1995);  Tex. Code Crim. Proc. Ann. art.
39.14(a).  Accordingly, appellant was not
entitled to physical possession of the evidence. 

B.        Alleged
Withholding of Exculpatory Evidence

Appellant also asserts that the State withheld the following
exculpatory evidence:  comparison of
unidentified fingerprints found at the scene with Bill=s and Betty=s fingerprints and a national
fingerprint database; analysis of Betty=s bloody clothing and shoes;
documents relating to appellant=s previous legal name change; proof of ownership for the
murder weapons; the investigating deputies= notes; the alleged silencer and any
analysis; and ballistics analysis concerning a Asecond gun.@








Appellant is apparently asserting a Brady
violation.  When the State withholds
evidence favorable to the defendant, due process is violated if the evidence is
material to either guilt or punishment, irrespective of the good faith or bad
faith of the prosecution. Brady v. Maryland, 373 U.S. 83, 87 (1963); Wyatt
v. State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000).  To invoke Brady, the accused must show
that (1) the State failed to disclose evidence, regardless of the prosecution=s good or bad faith, (2) the withheld
evidence is favorable to the accused, and (3) the evidence is material; that
is, there is a reasonable probability that had the evidence been disclosed, the
outcome of the trial would have been different. 
Hampton v. State, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002); Wyatt,
23 S.W.3d at 27.

Appellant cites various testimony that purportedly
demonstrates the listed items existed, but the State failed to disclose
them.  However, the record reflects that
at least some of these items did not even exist.[15]  With respect to the other items, appellant
has not shown that the State failed to disclose them.  As we have discussed, the trial court allowed
appellant liberal discovery of the State=s file.  In fact, contrary to appellant=s assertion, the record affirmatively
reflects that the State provided appellant a copy of the ballistics report on
the guns.[16]








Finally, to the extent the State did not disclose any of the
remaining items, appellant has not shown they were favorable to him and
material as required to invoke Brady. 
Except for the silencer, appellant offers no explanation whatsoever as
to why the items were favorable and material, and it is not readily apparent
that any of the items were favorable and material.  Appellant argues that if he had been given
access to the alleged silencer, he could have shown it was merely a water
filter.  However, when Deputy Lovett
reviewed a photograph of this object at trial, he agreed it was a filter but
indicated the filter was converted to a homemade silencer.[17]  Because Deputy Lovett agreed the object was a
filter, any examination by appellant would not have negated that it was also
used as a silencer.  Therefore, appellant
has not shown that examination of the silencer would have been
exculpatory.  We overrule his sixth
issue.

VII.  Jury Note

In his seventh issue, appellant asserts the trial court
failed to comply with article 36.27 of the Texas Code of Criminal Procedure
when it responded to a jury note.[18]  Article 36.27 which governs jury
communications with the trial court provides in pertinent part: 

The court shall answer any such
communication in writing, and before giving such answer to the jury shall use
reasonable diligence to secure the presence of the defendant and his counsel,
and shall first submit the question and also submit his answer to the same to
the defendant or his counsel or objections and exceptions, in the same manner
as any other written instructions are submitted to such counsel, before the
court gives such answer to the jury, but if he is unable to secure the presence
of the defendant and his counsel, then he shall proceed to answer the same as
he deems proper.  The written instruction
or answer to the communication shall be read in open court unless expressly
waived by the defendant.  

Tex. Code Crim. Proc. Ann. art. 36.27 (Vernon 1981).  Article 36.27 further provides that AAll such proceedings in felony cases
shall be a part of the record and recorded by the court reporter.@ 
Id. 








During deliberations, the jury sent a note requesting three
items of evidence including the Asuicide note.@ 
With respect to the Asuicide note,@ the trial court wrote Anot in evidence@ on the jury=s request.  According to appellant, the trial court did
not read this response to the jury=s note in open court and in appellant=s presence as required by article
36.27.  The appellate record contains no
record of a proceeding under article 36.27. 
However, even if the trial court did not comply with article 36.27, any
error was harmless.  When a trial court=s communication with the jury does
not amount to additional instructions, failure to comply with article 36.27 is
not reversible error.  McFarland v.
State, 928 S.W.2d 482, 517B18 (Tex. Crim. App. 1996), overruled on other grounds by
Mosley v. State, 983 S.W.2d 249, 263 (Tex. Crim. App. 1998).  Here, the trial court=s response that a requested item was Anot in evidence@ does not amount to additional instructions;
thus, any failure to comply with article 36.27 was not reversible error.  See Rodriguez v. State, 625 S.W.2d
101, 102B03 (Tex. App.CSan Antonio 1981, pet. ref=d) (finding trial court=s non-compliance with article 36.27
when refusing jury=s request for exhibits that were not admitted was not
reversible error).  Appellant=s seventh issue is overruled.

VIII.  Alleged AJudicial
Bias@

In his multifarious eighth, ninth, and eleventh issues,
appellant argues that the trial court demonstrated Ajudicial bias@ by controlling the courtroom in a
manner that destroyed his presumption of innocence and treating him with
prejudice.  Appellant lists numerous
actions by the trial court to support these contentions.  Again, he primarily repeats his other
complaints, but we discern the following additional complaints:

A.        Courtroom
Seating








According to appellant, he was ordered to sit in a particular
chair in direct view of all the jurors instead of in a chair with a less direct
view.  However, he does not cite any
record references showing the trial court required him to sit in a particular
chair, much less show how his sitting in a particular chair destroyed his
presumption of innocence.  Consequently,
he has waived appellate review of this complaint.  See Tex.
R. App. P. 38.1(h); Alvarado v. State, 912 S.W.2d 199, 210 (Tex.
Crim. App. 1995) (finding appellant waived appellate review of issue by failing
to cite pages in the record where alleged errors were shown).

B.        Presence of
Deputies

Appellant complains that the trial court had armed deputies
stand behind him while he was seated. 
Further, appellant complains that a deputy would Aescort@ him when he moved around the
courtroom, thus destroying his presumption of innocence.  To the contrary, in response to appellant=s objection, the trial court remarked
that the deputies did not stand behind appellant, but were present in
the courtroom as is customary. 
Nonetheless, the trial court did remark that it needed the deputies to
be aware of appellant=s movements because he was representing himself and had full
access to the courtroom.  A trial court
generally has broad power to control its proceedings.  Tex.
Gov=t Code Ann. ' 21.001(b) (Vernon 2004); State v.
Poe, 98 S.W.3d 194, 199 (Tex. Crim. App. 2003).  Appellant has not shown that the trial court
abused this power.

C.        Trial Court=s Admonishments








Appellant contends the trial court admonished him in front of
the jury to stand when addressing the court and ask permission to move around
the courtroom. Although the trial court has inherent power to control its
proceedings, if it is necessary for the trial court to reprimand counsel, it is
preferable to do so outside the jury=s presence and hearing.  See Gonzales v. State, 2 S.W.3d 600,
607 (Tex. App.CTexarkana 1999, pet. ref=d). 
However, to constitute reversible error, a trial court=s comment must be calculated to
injure the rights of the accused, or it must appear from the record that the
accused has not had a fair and impartial trial. 
Id.  Here, the trial court=s admonishments in front of the jury
that appellant observe generally-recognized courtroom decorum were not
calculated to injury appellant=s rights and did not deprive him of a fair and impartial
trial.

D.        Trial Judge=s Tone of Voice, Demeanor, and Gestures 

Appellant asserts that the trial court=s tone of voice and demeanor were
more deferential towards the State than appellant, and the trial court nodded
her head Ayes@ during the State=s closing argument.  However, complaints regarding the trial court=s tone of voice, demeanor, and
physical gestures are not determinable from the record, and, thus, appellant
has presented nothing for our review.  See
Green v. State, 912 S.W.2d 189, 192 (Tex. Crim. App. 1995) (recognizing
appellate court will not decide case based on speculation about matters not
shown in the record).  Similarly,
appellant asserts that the trial court was curt, rude, and demeaning to him in
front of the jury.  However, he cites no
specific instances in which he was treated in this manner, but rather cites the
entire record of the pre-trial hearings and his entire cross-examination of
witnesses during trial.  We have no duty
to pore through the two volumes of record from the pre-trial hearings and the
seven volumes of record from the trial to identify the instances complained
of.  See Alvarado, 912
S.W.2d at 210.  Without specific record
references, this complaint is inadequately briefed and is waived.  See Tex.
R. App. P. 38.1(h); Alvarado, 912 S.W.2d at 210.

E.        Denial of
Motion for Substitute Court-Appointed Attorney

Appellant
complains that the trial court forced him to represent himself by denying his
motion for a substitute court-appointed attorney.  However, appellant does not explain why any
denial was improper and does not cite any legal authority.  Therefore, this complaint is inadequately
briefed and is waived.  Tex. R. App. P. 38.1(h); Cardenas,
30 S.W.3d at 393.  F.           Evidentiary Rulings








Appellant contends the trial court Aallowed evidence from illegal seizure
without specific mention in the warrant.@ 
Appellant devotes one sentence to this complaint; he  cites no record references to show what
seizure or evidence he challenges and cites no legal authority.  Accordingly, this complaint is inadequately
briefed and is waived.  See Tex. R. App. P. 38.1(h); Cardenas,
30 S.W.3d at 393; Alvarado, 912 S.W.2d at 210.

Finally, appellant asserts the trial court showed bias for
the State during appellant=s cross-examination of witnesses because it Asustained objections@ even when no objection was made by
the State and coached the State on how to object.  He cites two instances in which the trial
court apparently anticipated the State=s Ahearsay@ objection and stated Asustained@ before the State made the
objection.  He also cites one instance
when the trial court overruled the State=s objection, but noted appellant=s question had been asked and
answered and so disallowed the question on that ground. However, these
instances do not show bias considering the trial court also suggested several
times how appellant should frame questions to avoid objections.  We overrule appellant=s eighth, ninth, and eleventh issues.


IX. 
Factual Sufficiency

In his twelfth issue, appellant contends the evidence is
factually insufficient to support the jury=s verdict.  In reviewing the factual sufficiency of the
evidence, we consider all of the evidence in a neutral light and will set aside
the verdict only if (1) the evidence supporting the verdict, if taken alone, is
too weak to sustain the finding of guilt beyond a reasonable doubt, or (2) the
contrary evidence is so strong that the State could not have met its burden of
proof beyond a reasonable doubt.  Zuniga
v. State, 144 S.W.3d 477, 484B85 (Tex. Crim. App. 2004).








A person commits murder if he intentionally or knowingly
causes the death of an individual; or intends to cause serious bodily injury
and commits an act clearly dangerous to human life that causes the death of an
individual.  Tex. Pen. Code Ann. ' 19.02(b)(1), (2) (Vernon 2003).  Here, the State presented significant
evidence that appellant murdered Bill including Betty=s testimony that appellant shot Bill,
the evidence that appellant dismembered Bill=s body, the evidence that at least
one of Bill=s wounds was inflicted by a gun found
in appellant=s bedroom, the APlausible Deniability@ notes, the neighbor=s testimony that appellant had
changed his appearance two days after the murder, appellant=s statement to his friend that he had
Adone something bad@ and had buried body parts, and his
statement to his ex-wife that something had happened to Bill.

Despite these revelations, appellant argues the evidence is
factually insufficient to prove he murdered Bill.  He asserts that only Bill=s first gunshot wound was fatal, but
Betty did not see appellant fire the first shot; therefore, there is
insufficient evidence that he inflicted the fatal wound.  We disagree. 
Based on the condition of Bill=s body, the medical examiners were
able to detect only two gunshots wounds: the shot through the breastbone, aorta
and lung; and the shot through the back of the head.  However, they testified that both
wounds were fatal, and Bill was alive when he received both wounds.  Betty did see appellant inflict at
least one of these wounds because she saw appellant shoot Bill in the back of
the head.  Moreover, although Betty did
not see appellant fire the first shot, the jury could have rationally inferred
he fired the first shot.  Betty testified
that immediately before the first shot, Bill stated ASo now you are going to kill me?@ 
Betty turned around and saw appellant. 
Only Bill, Betty, and appellant were in the home at that time.  Further, Betty saw appellant leave the room,
immediately return, and shoot Bill. 
Accordingly, the evidence is factually sufficient to support the
verdict.  We overrule appellant=s twelfth issue.

X. 
Motion to Abate

On December 14, 2005, appellant filed a motion to abate this
appeal which we ordered to be submitted with the case.  Essentially, appellant requests that we abate
because the trial court did not hold a Jackson v. Denno hearing to
determine the voluntariness of the confession/suicide note found in appellant=s truck and did not make findings of
fact and conclusions of law to support a determination that the
confession/suicide note was voluntary.








When a defendant challenges admission of his statement on the
ground that it was involuntary, the trial court must hold a hearing outside the
presence of the jury concerning the admissibility of the statement.  Jackson v. Denno, 378 U.S. 368, 380
(1964); Alvarado, 912 S.W.2d at 211; Tex.
Code Crim. Proc. Ann. art. 38.22, '6 (Vernon 2005); see Tex. R. Evid. 104(c).  At the hearing, the State bears the burden to
prove by a preponderance of the evidence that the statement was freely and
voluntarily made. Alvarado, 912 S.W.2d at 211.  Here, appellant filed motions to suppress the
confession/suicide note on several grounds including voluntariness.  The trial court held a pre-trial hearing to
consider admission of the note and ruled that it was admissible.  Although the trial court did not specifically
state that the hearing was a Jackson v. Denno hearing, the hearing
encompassed the voluntariness of the confession.  At the beginning, the trial court
acknowledged that there were Aa couple of issues@ concerning the note, and the State
presented evidence that it was voluntary.[19]








Nonetheless, appellant contends in his motion to abate that
the hearing was not a Jackson v. Denno hearing because the trial court
addressed the legality of the search in which the note was found, but not the
voluntariness of the note.  The trial
court did rule at the end of the hearing that the note was admissible because
the search and seizure were proper and did not explicitly state that the note
was voluntary.  However, it was appellant
who shifted the focus of the hearing to the legality of the search and
seizure.  Appellant offered no evidence
that the note was involuntary to rebut the State=s evidence.  To the contrary, his own testimony at the
hearing demonstrated that the note was voluntary and instead focused on whether
the search of the truck was legal.[20]  Further, in his closing statement at the
hearing, appellant objected to admission of the note on the ground that it was
obtained through an illegal search and seizure and did not argue that the note
was involuntary.  Consequently, the trial
court complied with Jackson v. Denno and article 38.22 by affording
appellant a hearing at which the State presented evidence that the note was
voluntary.  The trial court did not
violate Jackson v. Denno and article 38.22 by ultimately directing its
comments to the legality of the search and seizure considering that at the
hearing, appellant effectively abandoned his initial claim that the note was
involuntary.[21]

Appellant also requests abatement because the trial court did
not make findings of fact and conclusions of law to support a determination
that the note was voluntary.  When a
defendant challenges the voluntariness of a statement, article 38.22 requires
the trial court to make written findings of fact and conclusion of law as to
whether the challenged statement was voluntary. 
Tex. Code Crim. Proc. Ann.
art. 38.22, '6; Urias v. State, 155 S.W.3d
141, 142 (Tex. Crim. App. 2004).  When
the trial court has not made such findings and conclusions, the appellate court
must abate the appeal and instruct the trial court to make the required
findings and conclusions.  Urias,
155 S.W.3d at 142; Wicker v. State, 740 S.W.2d 779, 784 (Tex. Crim. App.
1987).  However, we conclude abatement is
not required here.








First, as we have discussed, appellant effectively abandoned
his initial challenge to the voluntariness of the note once the trial court
afforded him a hearing.  Moreover, the
purpose of requiring the trial court to file findings and conclusions is to
provide the appellate court with a basis upon which to review the trial court=s ruling that a statement was
voluntary.  See Wicker, 740 S.W.2d
at 783 (Tex. Crim. App. 1987); Zervos v. State, 15 S.W.3d 146, 154 (Tex.
App.CTexarkana 2000, pet. ref=d); Nichols v. State, 810
S.W.2d 829, 831 (Tex. App.CDallas 1991, pet. ref=d); see also Urias, 155 S.W.3d
at 142 (recognizing when requiring abatement that the court of appeals made its
decision concerning voluntariness of defendant=s confession without the benefit of
the requisite findings and conclusions). 
Here, appellant has not presented any issue in his appellate brief
challenging the voluntariness of the note. 
In fact, the note was admitted only during the punishment phase, and
appellant does not challenge the punishment determination. Rather, appellant
merely filed a motion to abate after his brief was filed and this case
was submitted.  Therefore, abatement for
the trial court to file findings and conclusions would serve no purpose other
than delaying resolution of this appeal. 
Accordingly, we deny appellant=s motion to abate.

The judgment of the trial court is affirmed.

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered
and Memorandum Opinion filed May 11, 2006.

Panel consists of
Justices Hudson, Frost, and Seymore.

Do Not Publish C Tex.
R. App. P. 47.2(b).











[1]  Initially, we
note that appellant, who has appeared pro se during the guilt/innocence
phase of his trial and on appeal, presents many issues that are confusing,
multifarious, and overlapping, but we have tried to discern all his
complaints.  However, as we will discuss,
some issues are inadequately briefed to the extent that he has waived appellate
review. See Kindley v. State, 879 S.W.2d 261, 264 (Tex. App.CHouston [14th Dist.] 1994, no pet.) (stating pro se
litigant is held to same standards as attorney and must comply with briefing
rules).





[2]  Appellant
cites the following instances: (1) Appellant asked Betty, ADid I immediately come and take advantage of your
invitation [to live with the Bairds] or did I hesitate?@  After the
State made a hearsay objection, the trial court stated to Betty, AWhen did he come to live with you?  You may answer that question.@;  (2) The State
objected to appellant=s question about the floor plan of the home as Aleading.@  The trial court responded, ACross-examination can be leading.  You can ask the leading questions,
counsel.  Is this wall four feet long or
seven.  And the witness can say yes or
no.@; and (3) Betty gave a non-responsive answer when
appellant asked about a chair.  The trial
court instructed Betty: AIf you=ll just answer his questions.  Was the chair there that night?  Do you know? 
It=s okay if you don=t know.@





[3]  Although
appellant contends in these issues that the trial court violated his Aconstitutional rights@ and
allowed Aa tainted jury, jury irrationality and a wrongful
conviction,@ he actually challenges the admission of evidence.





[4]Appellant=s
contention regarding dismemberment evidence is difficult to address.  He intermingles a complaint that all
dismemberment evidence in general, such as Adismemberment
photos and discussion,@ was inadmissible with a complaint that particular
items of evidence were inadmissible. 
Appellant filed a motion to suppress all dismemberment evidence as
irrelevant and unfairly prejudicial.  At
a pre-trial hearing, the trial court apparently addressed this motion to
suppress while also addressing appellant=s motion
in limine.  The trial court overruled the
Arelevancy@
objection, but appellant did not argue, or obtain a ruling on, his Rule 403
objection.  Thus, appellant did not
preserve error on Rule 403 grounds as to all dismemberment evidence.  See Tex.
R. App. P. 33.1(a).  However,
during trial, he objected to some dismemberment evidence on Rule 403
grounds.   Nonetheless, for conciseness,
we will address his contention that all dismemberment evidence was irrelevant
and inadmissible under Rule 403, and then address his challenge to specific
evidence.  On appeal, appellant also
suggests the dismemberment evidence in general was hearsay, speculation, and
conjecture.  However, appellant did not
object and obtain a ruling on these grounds with respect to the dismemberment
evidence in general; thus, he did not preserve error on these complaints.  See Tex.
R. App. P. 33.1(a); Guevara v. State, 97 S.W.3d 579, 583 (Tex.
Crim. App. 2003) (recognizing that objection at trial must comport with
complaint on appeal to preserve error).





[5]  Appellant
repeatedly cites Rule 401 which merely defines ARelevant
Evidence.@  Tex. R. Evid. 401.  We read his complaint as invoking Rule 404(b)
because he contends the evidence concerns an extraneous offense. 





[6]  Appellant also
contends the notes were hearsay. 
However, he did not object and obtain a ruling on this ground; thus he
did not preserve error on this complaint. 
See Tex. R. App. P. 33.1(a);
 Guevara, 97 S.W.3d at 583.





[7]  Although the
notes are hard to read, they include entries such as Aget ice,@ ALv. to get more tools@ including
containers, Acutter,@ blades,
odor control supplies, and disinfectant, and ABegin .
. . dice process.@





[8]  If appellant
believed the colors in the actual photograph would affect our assessment of
prejudice, he should have ensured the original photograph or a color photocopy
was included in the record.  See Williams
v. State, 958 S.W.2d 186, 196 n.10 (Tex. Crim. App. 1997).





[9]  On appeal,
appellant also suggests the testimony was irrelevant, unfairly prejudicial, and
hearsay, but he objected, and thus preserved error, only on his Aspeculation@
complaint.   See Tex. R. App. P. 33.1(a);  Guevara, 97 S.W.3d at 583.





[10]  In this note,
appellant confessed that he killed Bill and dismembered his body and planned to
commit suicide.  However, appellant
claimed that Bill first pointed a gun at him, and he wrestled the gun from Bill
and shot him several times.  Appellant
also blamed his state of mind at the time of the shooting on Bill=s allegedly abusive treatment of Betty and appellant.





[11]  On appeal,
appellant asserts the note was hearsay, self-incrimination, and
irrelevant.  During a pre-trial hearing
on his motion to suppress the note, he objected that it was obtained through an
illegal search and/or seizure.  When the
note was offered during the guilt/innocence phase, he objected that the note
was seized during an illegal search and Anot
relevant under 403 of the Rules of Evidence.@





[12]  Appellant
asserts that he requested, and the trial court allowed, a running objection on
all evidence seized from his truck.  However,
any such objection would concern only the note, not Deborah Jacob=s testimony that appellant asked her for pen and paper
to write a note.





[13]  Appellant
complains of the operation of the Sawzall during closing argument in some of
his other issues, but we will include this complaint in his fourth issue
because it concerns jury argument.





[14]  Article 39.14
was amended in 2005 to eliminate much of the trial court=s discretion by replacing Amay order@ with Ashall order,@ but the
amendment is not applicable to this case. 
See Tex. Code Crim. Proc.
Ann. art. 39.14(a). 





[15]  An
investigating deputy testified that he did not compare unidentified
fingerprints with Bill=s and Betty=s
fingerprints because Bill=s and Betty=s
fingerprints were not on file.  Further,
he testified that he searched some of the unidentified fingerprints in the
fingerprint system for Harris County, but this system is not a national
database. 





[16]  At a hearing
just before trial, the trial court inquired whether appellant had a copy of the
ballistics report.  The State responded
that it had shown the report to appellant=s
previous attorney, but the trial court ordered the State to provide another
copy to appellant.





[17]  Apparently,
only the photograph, and not the actual object, was admitted into evidence.





[18]  Appellant
complains about the trial court=s response to the jury note again in his tenth issue
while also challenging admission of evidence. 
We will address his complaint regarding the jury note as his seventh
issue.





[19]  A Harris
County deputy testified that Harrison County officers arrested appellant after
they found him in his truck.  The Harris
County deputy met with appellant shortly after his arrest.  Appellant asked if the officers found the
note he left in the truck and said that the note Aexplains
everything.@  Subsequently,
the officers obtained a search warrant for the truck and found the note during
their search.  Therefore, the State
presented evidence that appellant=s
confession/suicide note could not have resulted from any Aofficial, coercive conduct@ because it was written before the officers even
encountered appellant. See Alvarado, 912 S.W.2d at 211 (holding that a
statement is involuntary Aonly if there was official, coercive conduct of such a
nature that any statement obtained thereby is unlikely to have been the product
of an essentially free and unconstrained choice by its maker.@).





[20]  Appellant
testified that immediately after he stepped out of his truck, the officers found
the note and asked him what it was. 
Therefore, even appellant=s
version is evidence that the confession was not the result of any Aofficial, coercive conduct@ because it was written before officers encountered
him. 





[21]  When the note
was actually admitted during the punishment phase of the trial, appellant
reurged  his Aobjections . . . made earlier,@ specifically Aillegal
search@ and Anot relevant under 403,@ and
again did not argue that the note was involuntary.