James Wesley **SCHEXNIDER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 09–94–374–CR.

Court of Appeals of Texas, Beaumont.

Submitted Oct. 24, 1996.

Decided April 9, 1997.

**196**

Michael C. Abbott, Orange, for appellant.

John D. Kimbrough, County Attorney, Orange, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

Appellant was charged by indictment with the offense of capital murder alleged to have been committed on or about January 3, 1993. The four-paragraph indictment charged the offense in four different ways: (1) murder by firearm in the course of committing robbery; (2) murder by firearm in the course of committing kidnapping; (3) murder by knife in the course of committing robbery; and (4) murder by knife in the course of committing kidnapping. Appellant entered a plea of not guilty and trial was to a jury. After hearing the evidence, the jury returned a verdict of guilty as charged in the indictment. Because the State did not seek the death penalty, the trial court sentenced appellant to life in the Texas Department of Criminal Justice–Institutional Division. From this judgment and sentence, appellant has perfected his appeal.

## FACTS

Appellant met the decedent, Joe Don King, through a neighbor. Decedent was reportedly a major drug dealer and appellant went to work dealing drugs for King on a small-time basis. On New Year's Eve 1992, King went to the residence of appellant and, according to appellant, they discussed the possibility of appellant's delivering some marijuana in Ohio for King. King left, but returned to appellant's residence later that night.

Appellant's rather self-serving rendition of the events surrounding King's murder are as follows: King and appellant left appellant's residence together in King's Ford pickup truck. With King as the driver, they left Vidor traveling east on Interstate 10. As they passed through Orange and entered Louisiana, appellant told King several times he wanted to go home, but King would not turn around and go back to Vidor. When King refused to tell appellant where they were going and refused to return appellant

to his home, appellant pulled his .25 automatic pistol. At that point, King turned the vehicle around and headed back to Vidor.

Appellant testified that when he and King arrived at appellant's residence, King pulled his truck into the driveway and was cursing appellant. Appellant got out of the truck and went to the front door. When he found the door was locked, he proceeded to the back door of the mobile home. By this time King had gotten out of his truck and was cursing and yelling at appellant, saying "I've got something for you, boy." Appellant began to run around the mobile home to the back door. Appellant slipped and fell to the ground as he neared the back door. By this time, King had arrived at the spot where appellant was lying. Appellant pulled his gun, which King kicked out of his hand. King and appellant scuffled, and appellant eventually knocked King to the ground. While King was on the ground, appellant found his gun and told King to stay down. When the victim refused to comply with appellant's orders to stay on the ground, appellant shot him in the back of the head. Appellant went into the mobile home, got a knife, returned to where King was lying, and cut King's throat.

Appellant dragged King's body up underneath the trailer, removed his wallet, took his beeper, and took money out of King's pocket. He then dragged King's body farther up under the trailer into the air-conditioning duct. Appellant took the items he had removed from King's body, got into King's pickup truck, and went to Dallas for about a week. Upon his return to Vidor, appellant dismembered King's body, wrapped the body parts in plastic and duct tape, and deposited them in a marshy area near Little Chenier, Louisiana.

### Points of Error

Point of Error Number One:
The evidence is insufficient as a matter of law to sustain the conviction for capital murder because there is no proof that the murder was committed in the course of committing or attempting to commit kidnapping.

Point of Error Number Two:

The jury verdict that appellant was guilty of capital murder committed in the course of committing or attempting to commit kidnapping was against the great weight and preponderance of the evidence.

Point of Error Number Three:

The evidence is insufficient as a matter of law to sustain the conviction for capital murder because there is no proof that the murder was committed in the course of committing or attempting to commit robbery.

Point of Error Number Four:

The jury verdict that appellant was guilty of capital murder committed in the course of committing or attempting to commit robbery was against the great weight and preponderance of the evidence.

Point of Error Number Five:

The trial court abused its discretion in admitting evidence, over objection, of extraneous conduct.

■ Appellant's first four points of error relate to the legal and factual sufficiency of the evidence. In points one and three, he seeks review of the jury's findings of capital murder under the traditional test for determining the *legal* sufficiency of the evidence. That test is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Fierro v. State,* 706 S.W.2d 310, 313 (Tex.Crim.App.1986). *See also Geesa v. State,* 820 S.W.2d 154, 155–161 (Tex.Crim.App.1991).

■ In points two and four, appellant asks for a review of the *factual* sufficiency of the evidence under the standards announced in *Stone v. State,* 823 S.W.2d 375 (Tex.App.— Austin 1992, pet. ref'd, untimely filed), and recently adopted by the Court of Criminal Appeals in *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). When the court of appeals conducts a factual sufficiency review in a criminal case, the court does not ask if any rational jury, after reviewing the evi-

dence in the light most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt. *Stone,* 823 S.W.2d at 381. Factual sufficiency review begins with the presumption that the evidence supporting the jury's verdict was legally sufficient for the purposes of the Due Process Clause of the Fourteenth Amendment. *Id.* Rather, the court reviews all the evidence without the prism of "in the light most favorable to the prosecution." *Id.* Because the court is not bound to view the evidence in the light most favorable to the prosecution, it may consider the testimony of defense witnesses and the existence of alternative hypotheses. The court should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* Before reversing a conviction on this basis, the court should detail the evidence and clearly state why the jury's verdict is so contrary to the overwhelming weight of the evidence as to be manifestly unjust, why it shocks the conscience, or why it clearly demonstrates bias; and, further, the court must state how the evidence contrary to the jury's verdict overwhelmingly outweighs the evidence that supports the verdict. *Id.* "In conducting a factual sufficiency review, an appellate court reviews the factfinder's weighing of the evidence and is authorized to disagree with the factfinder's determination. This review, however, must be appropriately deferential so as to avoid an appellate court's substituting its judgment for that of the jury." *Clewis,* 922 S.W.2d at 133.

Although Schexnider stipulated that he shot Joe King in the head with a firearm, he has not conceded he killed King in the course of committing a robbery or kidnapping. Having pled not guilty to capital murder, appellant takes the legal position that, although he killed King, the evidence was legally and factually insufficient to support the verdict of capital murder. Specifically, appellant contends he did not have any intention of robbing or kidnapping King at the time he killed him. On the contrary, appellant argues, he killed King in a spontaneous act, resulting from fear, confusion, and anger. According to Schexnider, I just "freaked out" and "lost my mind."

■■■ As noted previously, the indictment upon which appellant was tried was a four-paragraph indictment which alleged four different ways of committing the same offense. Because the jury returned a general verdict of guilty "as charged in the indictment," the record does not indicate upon which theory or theories the jury found appellant guilty. It is proper to provide a general verdict form in a case involving alternative theories of committing the same offense, and the jury is not required to designate under which theory it finds the accused guilty. *Gillum v. State,* 888 S.W.2d 281, 288 (Tex.App.—El Paso 1994, pet. ref'd); *Creel v. State,* 710 S.W.2d 120, 130–131 (Tex.App.—San Antonio 1986), *aff'd,* 754 S.W.2d 205 (Tex.Crim.App.1988); *see* TEX.CODE CRIM.PROC.ANN. art. 37.07, § 1(a) (Vernon 1981). When a general verdict is returned and the evidence is sufficient to support a finding under any of the counts submitted, the verdict will be applied to the offense finding support in the facts. *Aguirre v. State,* 732 S.W.2d 320, 326 (Tex.Crim.App. 1982) (opinion on rehearing). In other words, where alternative theories are submitted to a jury and a general verdict is returned, the conviction will be upheld if the evidence is sufficient to support any of the theories. *Escobedo v. State,* 805 S.W.2d 860 (Tex.App.—Corpus Christi 1991, no pet.); *Creel,* 710 S.W.2d at 131.

In the instant case, we conclude the evidence is sufficient to support the theory of murder committed in the course of a robbery, as discussed below. Since we find the evidence is sufficient to support the murder committed during a robbery theory, it is unnecessary to consider the points of error regarding murder committed during a kidnapping. Therefore, points of error one and two are overruled.

■■ In order for the killing of Joe King to qualify as a capital murder under TEX.PENAL CODE ANN. § 19.03(a)(2) (Vernon 1994), the intent to rob must be formed prior to or concurrent with the murder. *Robertson v. State,* 871 S.W.2d 701, 705 (Tex.Crim.App. 1993), *cert. denied,* 513 U.S. 853, 115 S.Ct. 155, 130 L.Ed.2d 94 (1994). The robbery itself, however, does not have to occur before

the murder; it may occur during, or in the immediate flight after, the commission of the murder. *See McGee v. State*, 774 S.W.2d 229, 234 (Tex.Crim.App.1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1535, 108 L.Ed.2d 774 (1990). In the instant case, appellant admitted he took King's wallet, his beeper, some money, and his truck immediately after the murder. The fact that the appropriation of King's property may have taken place immediately after, rather than before or during, King's murder does not preclude, at least on that ground alone, a guilty verdict for capital murder. "It is enough even if the State proves that the robbery occurred immediately *after* the commission of the murder." *Huffman v. State*, 746 S.W.2d 212, 217 (Tex.Crim.App.1988) (emphasis added). Therefore, rather than the timing of appellant's appropriation of King's property, appellant focuses on the issue of intent. He claims there is no evidence or factually insufficient evidence to prove appellant formed the intent to rob King prior to or concurrently with the murder.

## LEGAL SUFFICIENCY REVIEW

■ As noted in *Clewis*, a review conducted under the *Jackson v. Virginia*, "viewing the evidence in the light most favorable to the prosecution" construct, is essentially an analytical tool used to determine whether the evidence raises a fact issue at all. *Clewis*, 922 S.W.2d at 133. In the instant case, the record contains evidence at least raising a fact issue as to whether or not appellant's intent to rob King was formed prior to or at the time King was murdered. The record reflects that in May of 1993, some five months after the murder, the authorities conducted a search of the grounds around the area where appellant's mobile home was located in Orange County. The search turned up a .25 caliber shell casing. This is consistent with appellant's previous oral and written statements to the police that he shot the victim just outside the mobile home. Trial testimony was elicited by the State from John Howard, appellant's neighbor, who also was married to King's cousin. Howard testi-

fied that King was known to carry three to four thousand dollars on him daily. According to Howard, appellant was buying cocaine from King and had started to help King sell drugs as well. Howard also stated that appellant was in debt to King for previous cocaine purchases and was apparently behind in his mobile home payments. Describing events surrounding the night of the murder, Howard testified that appellant and the victim were planning to go to Houston to buy cocaine, and that Howard had personally helped King count out fifteen thousand dollars to be used to make the drug purchase. Howard stated that the money was placed in a blue duffle bag. The blue duffle bag and its contents were never seen again after King left with it to go pick up appellant for the trip to Houston.[1]

Later in the trial, the State called Virginia Ashworth to testify. Ms. Ashworth identified herself as a cousin of appellant's wife. She stated that appellant and his wife moved from Vidor to Bay City, Texas, around the latter part of January or the first part of February of 1993. Ms. Ashworth was living in Bay City at that time. The State elicited from Ms. Ashworth, over strenuous objection from appellant, details of a conversation between her and appellant during the time appellant was living in Bay City. This portion of Ms. Ashworth's testimony appears as follows:

Q [The State] What did Jimmy tell you on that occasion?

A [Ashworth] We were at my house, me and him and Stormey. We were there. And we talked about how Christmas was. It was real bad for all of us, even my family.

Q Who all was in the van?

A Me and Stormey and Jimmy.

Q So it was the three of you at your house on this occasion, too?

A Uh-huh.

Q What was Jimmy saying about Christmas?

---

1. At trial, appellant admitted having seen a blue duffle bag in King's truck following the murder, but denied any knowledge of the bag's contents.

Appellant further testified that during his stay in Dallas, King's truck was burglarized and the duffle bag was stolen along with its contents.

A. He said it was a real bad Christmas for them because he had been out of work and that he, you know, wished he could have gotten the kids a better Christmas. And I told him, you know, "I wish my Christmas would have been better for my kids, too." And he told me that he knew a man that come to his house all the time.

Q Did he tell you the man's name?

A No, he never told me. And he said that—

[Appellant's first objection overruled, and next objection sustained]

Q What did he say about this man?

A He said that there was a man that came to his house in real nice three-piece suits.

Q Did he tell you how often the man came to his house?

A He came there a lot.

Q That's what I thought, okay. What else?

[Appellant's objection sustained as to State's sidebar comment]

Q What else did he say about the man?

A He said he had money. He said he pulled out a lot of money, you know, it was just a roll of big bills, and he said, "That could have, you know, been my kids' Christmas," you know, and I said, "Yeah, it could have been." And he said, you know, what really scared him was that the thought of killing this man went through his mind.

Q Jimmy said the thought of killing the man went through his mind?

A Yes.

Q Did he tell you why the thought went through his mind?

A Because he had money.

■■■■■ In Texas, the law provides that the jury is the exclusive judge of the facts proved, the credibility of the witnesses, and the weight to be given to their testimony. *Wyatt v. State*, 889 S.W.2d 691, 693 (Tex. App.—Beaumont 1994, no pet.); TEX.CODE CRIM.PROC.ANN. art. 38.04 (Vernon 1979). Indeed, the law fully permits the jury to believe a witness even though the witness's testimony has been contradicted; and a jury may accept any part of a witness's testimony and reject the rest. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). Intent may be inferred from circumstantial evidence. *Wolfe v. State*, 917 S.W.2d 270, 275 (Tex.Crim.App.1996). Based upon the evidence set out above, we cannot say that appellant's intent to rob could not have been inferred by the jury to have been formed prior to or contemporaneous with the murder of King. Indeed, we need not rely, as does the State, on appellant's description of the events surrounding the murder. From the testimony of other witnesses and the existence of physical evidence, it was just as reasonable to infer that appellant knew that King was coming to pick him up to go to Houston, that King would be in possession of a large amount of money, that appellant met King at the door of the mobile home and shot King immediately or shortly thereafter, that appellant then hid King's body in some fashion after first removing various items from the body, and that appellant then took King's truck to Dallas where some or all of King's personal belongings, as well as the firearm used by appellant, were either sold or traded to support appellant's cocaine habit. In short, we find the evidence legally sufficient to support the robbery element of the charged offense. Point of error three is overruled.

## FACTUAL SUFFICIENCY REVIEW

■■■■■ As the Court in *Clewis* described it, a factual sufficiency review permits an appellate court to review the factfinder's weighing of the evidence and is authorized to disagree with the factfinder's determination. *Clewis*, 922 S.W.2d at 133. However, the Court was quick to point out that a factual sufficiency review must be appropriately deferential so as to avoid an appellate court's substituting its judgment for that of the jury. *Id.* As previously mentioned, in a factual sufficiency review, the reviewing court should reverse the conviction only when it determines that the verdict is against the great weight of the evidence presented at trial so as to be clearly wrong and unjust. *Id.* at 135. After closely examining the evidence

presented by both the State and appellant at trial, we simply are unable to say that the jury's verdict of Capital Murder is manifestly unjust, or why it shocks the conscience, or how it clearly demonstrates bias. *Id.* In other words, appellant's evidence does not *greatly* outweigh the evidence in support of the implied finding that King's murder occurred in the course of appellant's commission or attempted commission of robbery. The State's witnesses and physical exhibits provide sufficient circumstantial evidence of appellant's intent to rob King in the face of appellant's purely subjective testimony to the contrary. Point of error four is overruled.

In appellant's final point of error, he alleges the trial court abused its discretion in admitting evidence of extraneous conduct—namely appellant's dismemberment of King's body. We do not conclude the trial court abused its discretion in admitting such evidence; the State is permitted to show the entire context of the offense to the jury.

■ Prior to trial, the court conducted a hearing on appellant's motion to strike extraneous offenses. Appellant based his motion on alleged relevancy grounds and alleged violations of TEX.R.CRIM.EVID. 403 and 404(b). (SF 3) Since appellant does not dispute his dismemberment of the body, we move directly to review its relevancy. A Rule 404(b) objection entails a relevancy analysis. *Santellan v. State*, 939 S.W.2d 155, 167 (Tex.Crim.App.1997).

■ The State contends the dismemberment of the body was part of the same transaction as the charged offense. We take this to mean the State is claiming the evidence is admissible under the "same contextual transaction doctrine." *See Rogers v. State*, 853 S.W.2d 29 (Tex.Crim.App.1993). Generally, evidence of extraneous matters committed in the same transaction as the charged offense, and offered to place the charged offense in the proper context, is admissible under Rule 404(b) if such evidence is necessary to the jury's understanding of the charged offense. *Id.*; *Nelson v. State*, 864 S.W.2d 496, 499 (Tex.Crim.App.1993), *cert. denied*, 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994). "It is well settled that where one offense or transaction is one

continuous episode, or another offense or transaction is a part of the case on trial or blended or closely interwoven therewith, proof of all the facts is proper." *Moreno v. State*, 721 S.W.2d 295, 301 (Tex.Crim.App. 1986); *Mitchell v. State*, 650 S.W.2d 801, 811 (Tex.Crim.App.1983), *cert. denied*, 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984).

The Court of Criminal Appeals discussed the admissibility of evidence of other offenses connected to the crime charged in *Camacho v. State*, 864 S.W.2d 524, (Tex.Crim.App. 1993), *cert. denied*, 510 U.S. 1215, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994). In *Camacho*, the defendant shot the employee of a homeowner when the defendant came to the homeowner's residence. The defendant then kidnapped the homeowner's wife and son and later murdered them in Oklahoma. The Court of Criminal Appeals held the kidnapping and double murder of the wife and son were "part of the same transaction contextual evidence," even though they occurred after the victims were transported to Oklahoma. The extraneous offenses "illuminate[d] the nature of the crime alleged." *Id.* at 532.

In *Santellan*, the defendant shot the victim, put her in his car, and then transported her to a motel where he had sex with the corpse throughout the night. The abuse of corpse incident occurred in the two days immediately following the offense for which Santellan was indicted. The Court of Criminal Appeals found that, although a legally separate offense, appellant's sexual abuse of the corpse was blended or interwoven with the indicted offense and was essential to understanding the context and circumstances of the crime charged. *Santellan*, 939 S.W.2d at 168.

■ In the instant case, we likewise find the dismemberment of the corpse to be blended or interwoven with the indicted offense. In the course of committing murder, Schexnider robbed Joe King and subsequently dismembered the corpse and disposed of the body parts in different locations. We conclude the jury could rationally infer that Schexnider did such acts in order to conceal his crime. He testified he disposed of his bloody clothes because he did not want any

evidence to be found that could be used against him; it can likewise be inferred he dismembered the body in order to conceal evidence of the murder and prevent identification of the victim. His conduct goes to the element of intent and is admissible under Rule 404(b) as an exception to the principle that extraneous offenses are not to be admitted for the purpose of proving the character of the defendant in order to show that he acted in conformity therewith.

 Schexnider's conduct in dismembering the body is also indicative of a consciousness of guilt. "The 'consciousness of guilt' exception to the general prohibition against extraneous offense evidence is alive and well in Texas." *Peoples v. State*, 874 S.W.2d 804, 809 (Tex.App.—Fort Worth 1994, pet. ref'd). Dismemberment of a person's body after killing him is hardly the action of an innocent accused, and evidence of such is probative of guilt. Moreover, attempts to conceal incriminating evidence are admissible against the accused in a criminal prosecution. *Schuessler v. State*, 719 S.W.2d 320, 329 (Tex.Crim.App.1986), *overruled on other grounds, Meraz v. State*, 785 S.W.2d 146, 155 (Tex.Crim.App.1990); *Graham v. State*, 566 S.W.2d 941, 951 (Tex.Crim.App. 1978). Therefore, we conclude the evidence was relevant, falls within an exception to Rule 404(b), and was properly admitted under Rule 404(b).

 Appellant also argues the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury and is excludable by Tex.R.Crim.Evid. 403. *See Montgomery v. State*, 810 S.W.2d 372, 389–390 (Tex.Crim.App.1990) (opinion on rehearing). We have determined the abuse of corpse evidence served to make a fact of consequence (*i.e.*, whether or not the homicide was justifiable self-defense) more probable. Further, the evidence presented by the State to show the appellant in fact committed the offense of abuse of corpse was strong; appellant admitted to it. On the other hand, we note the repulsion and horror of the general public toward offenses of this nature, which could potentially affect the jury in an emotional way. *Santellan*, 939 S.W.2d at 169. However, appellant strongly urged the justifiable nature of his shooting of King during his testimony at trial. In light of these facts, we hold the trial judge did not abuse his discretion in concluding the danger of unfair prejudice did not substantially outweigh the probative value of this evidence. We overrule point of error five.

The judgment and sentence below are affirmed.

AFFIRMED.