**Opinion issued June 25, 2019**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-18-00385-CR**

———————————

**JOSEPH FAREK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 81416-CR**

**MEMORANDUM OPINION**

A jury convicted appellant, Joseph Farek, of murder and assessed punishment

at 60 years' confinement and a $10,000 fine.  In two issues on appeal, appellant

contends that (1) the evidence is legally insufficient and (2) the trial court erred in denying his motion to suppress evidence. We affirm.

## BACKGROUND

On March 26, 2017, Rogelio "Roy" Ornelas was shot and killed while target shooting near an isolated dump site. Appellant and co-defendant, Allen Taylor, had invited Roy to go shooting as a ruse to steal his guns. Appellant and Taylor waited for Roy to fire all the rounds in his gun. Then, appellant fired his gun into the back of Roy's head. After searching Roy's pockets for money, appellant and Taylor dragged Roy into a bayou and covered him with tires. Roy suffered a total of ten gunshot wounds—three to the head and seven to the torso. Appellant was charged and convicted of Roy's murder. The following is a summary of the evidence presented at trial.

### *Planning the Robbery*

On March 25, 2017, the day before the murder, appellant sent a text message to his friend, Taylor, saying, "bro, I need a lick to hit. My lights are off and I gotta pay my court cost tomorrow or I'm going to jail." Appellant contacted a potential firearms customer, Carl Jones, through Facebook Messenger and offered to sell Jones a "Mac-11 machine gun." Jones had previously met appellant at appellant's home, during which appellant told Jones that he planned to "hit a lick"—meaning to rob—a "22-year-old Mexican nigga" named "Roy something."

2

### Roy's Death

The following day, appellant sent separate text messages to his girlfriend and to Taylor detailing the plan to take Roy shooting and to steal Roy's guns. Appellant Facebook-messaged Jones stating that he was preparing to take Roy's firearms and describing several firearms belonging to Roy. At 3:30 p.m., appellant told Jones that he would have "five or six guns" available for sale later that day.

Roy lived in an apartment with his fiancée, Celeste Posada. Celeste testified that Roy received a call at 4:00 p.m. inviting him to go shooting with Taylor and another individual she could not identify, but who, by his own admission, was appellant. Taylor arrived at Roy and Celeste's apartment to go shooting when Celeste left the apartment around 6:30 p.m. Appellant, Roy, and Taylor went to the bayou to shoot guns. Appellant and Taylor waited for Roy to fire all the rounds in his gun. Appellant then fired the first shot into the back of Roy's head. Taylor and appellant shot Roy two more times in the back of his head and seven more times in the torso.

### The Aftermath of the Murder

After searching Roy's pockets for money, appellant and Taylor dragged Roy's body into the bayou and covered his remains with discarded tires and other debris. Appellant and Taylor then went to Anthony Salinas's house with a duffel bag of guns, which they hid in the woods behind Salinas's house. Appellant told Salinas

3

that he and Taylor waited until Roy ran out of bullets, shot him, and that appellant took the first shot into the back of Roy's head.

Appellant's cell phone records show that he reached out to find buyers for the sale of Roy's firearms and was negotiating with those buyers shortly before and after Roy's death. Facebook messages from Carl Jones show that appellant sent another message to him, indicating that he had acquired the guns the same evening. At 1:03 a.m., appellant sent a text to another buyer, also stating that he had handguns for sale.

### The Investigation

The night of the murder, Celeste attempted to contact Roy at 10:00 p.m., but was unable to reach him. The following day, she returned to their apartment and realized that Roy and his guns were missing. Celeste and Roy's family searched for him and reported him missing to the La Marque Police Department (LMPD).

While Roy's family was searching for him, appellant's Facebook firearms customer, Jones, noticed a post from a friend who said that his cousin, "Roy" was missing. Noticing similarities between the person appellant said he planned to rob and the missing person, Jones asked appellant for more details about the individual from whom he had stolen the guns. Appellant told Jones that the firearms were no longer available and stopped communicating with Jones. The LMPD saw that Jones's posts on Facebook were connected to Roy's disappearance. Jones led police

4

to Taylor, who, in turn, led police to appellant. After police questioned Taylor, he and appellant returned to the scene of the murder and moved Roy's body from the original dump site to a more remote location in Lake Jackson.

When interviewed by investigators, appellant said that he needed money for rent and electricity. Appellant admitted to being present when Roy was killed, moving Roy's body, and helping clean Taylor's car after the body was moved from the original dump site to Lake Jackson. Appellant also led the police to the location at which Roy was shot and originally dumped. He described where he was standing at the time of the murder, led the police to Roy's body, and then led them to the location behind Salinas's home, where police recovered the stolen firearms.

Appellant initially gave consent for officers to seize his cell phone. Appellant later withdrew that consent, after which the Lake Jackson police got a search warrant. Appellant's cell phone contained messages before and after the murder that detailed his intent to rob Roy, when and how he acquired the guns, and his attempts to resell them after the murder.

### *Motion to Suppress Evidence Gathered from Cell Phone*

Appellant filed two motions to suppress evidence gathered from his cell phone; one contending there was no search warrant and the second challenging the validity of the search warrant. Appellant argued that the warrant was general, overly broad, and that probable cause was not stated in the affidavit for the search warrant.

A hearing was held on appellant's motions to suppress. Appellant abandoned the first motion, which was based on the lack of a warrant, after the State produced a copy of the search warrant and supporting affidavit.

Appellant went forward on the second motion regarding whether the search was valid. The warrant stated that the item to be searched was appellant's "blue in color, Microsoft Lumia (Cricket) phone" and specifically listed the items to be searched within the phone pertaining to the murder investigation, including but not limited to, text messages and photographs.

The trial court denied appellant's second motion to suppress. The following evidence from appellant's phone was admitted at trial: (1) text messages between appellant and appellant's girlfriend describing the plans to rob Roy; (2) text messages between appellant and Taylor planning the robbery; (3) text messages between appellant and potential firearm buyers for the sale of Roy's guns; (4) photographs, including one of appellant with the firearm (.32 caliber revolver) used to kill Roy; and (5) photographs of Roy's guns laid out on appellant's bed.

### The Trial

Several fact witnesses testified at trial, giving a fairly consistent account of the parties' relationships, the surrounding events, and the motive for the murder. Appellant's girlfriend testified that appellant and Taylor planned to commit a robbery and had been talking about it for a few days. Analysis of text messages from

6

appellant's phone between appellant and appellant's girlfriend, and text messages between appellant and Taylor, indicated that appellant planned the robbery with Taylor to raise money.

A medical examiner testified that Roy suffered a total of ten gunshot wounds—three to the head and seven to the torso. Ballistics analysis of projectiles recovered from Roy's body indicated that he was shot by two different firearms.

Appellant's girlfriend testified that appellant and Taylor mentioned Roy, who "had marihuana and cash," as the target of their robbery. She testified that appellant and Taylor returned home the same day they went shooting with a bag of guns and cash. Subsequent evidence of appellant's text messages indicated appellant's intent to sell Roy's guns.

The jury returned a guilty verdict and assessed appellant's punishment at 60 years in prison and a $10,000 fine. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends that "the evidence adduced at trial was legally insufficient." Specifically, appellant argues that his "mere presence" at the scene of the murder is insufficient evidence upon which to convict him.

### Standard of Review and Applicable Law

In reviewing the legal sufficiency of the evidence to support a criminal conviction, a court of appeals determines whether, after viewing the evidence in the

light most favorable to the verdict, the trier of fact was rationally justified in finding the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).

Under the *Jackson* standard, evidence is insufficient to support a conviction if, considering all the evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson,* 443 U.S. at 317–19; *Laster v. State,* 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; or (4) the acts alleged do not constitute the criminal offense charged. *See Jackson,* 443 U.S. at 314, 318–20, 320; *Laster,* 275 S.W.3d at 518; *Williams v. State,* 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

This standard gives full responsibility to the factfinder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson,* 443 U.S. at 319; *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *see also Brown v. State,* 270 S.W.3d 564, 568 (Tex. Crim. App. 2008) (stating jury is sole judge of credibility of witnesses and weight to give their testimony). As the exclusive judge of the facts, the jury may

believe or disbelieve all or any part of a witness's testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). An appellate court presumes that the factfinder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. See Jackson, 443 U.S. at 326; see also Clayton, 235 S.W.3d at 778 (stating that reviewing court must "presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination").

On appeal, we may not re-evaluate the weight and credibility of the record evidence and thereby substitute our own judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). In reviewing the evidence, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries are permitted to make reasonable inferences from circumstantial evidence presented at trial. *Id.*

For evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with a defendant's guilt. *Cantu v. State*, 395 S.W.3d 202, 207–08 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). Rather, a court considers only whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the jury's verdict. *Hooper*, 214 S.W.3d at 16.

In conducting a sufficiency analysis, a reviewing court must consider all evidence the jury was rightly or wrongly permitted to consider. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). We examine "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Clayton*, 235 S.W.3d at 778 (quoting *Hooper,* 214 S.W.3d at 16–17). Finally, the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt, even if every fact does not "point directly and independently to the guilt of the accused." *See Powell v. State,* 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

A person commits murder if he intentionally or knowingly causes the death of another person or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of another. TEX. PENAL CODE § 19.02(b)(1), (2). A person is criminally responsible for an offense committed by the conduct of another if acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2).

*Analysis*

Appellant argues that the evidence of his guilt is legally insufficient. Thus, we must determine whether the necessary inferences are reasonable based on the

cumulative force of the evidence when viewed in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778.

Here, appellant not only admitted that he was present when Roy was murdered, but that he assisted with planning the robbery and then moving and concealing the body.

Appellant's conduct in hiding and moving the body is indicative of guilt. Attempts to conceal incriminating evidence are admissible against the accused in a criminal prosecution. *Shuessler v. State*, 719 S.W.2d 320, 329 (Tex. Crim. App. 1986), overruled on other grounds. Evidence of the efforts taken to cover up a crime is probative of the issue of guilt. *Paredes v. State,* 129 S.W.3d 530, 540 (Tex. Crim. App. 2004). Appellant's attempt to conceal Roy's body by assisting in moving it from the crime scene shows an attempt to conceal evidence of the murder and avoid detection. "[Moving] a person's body after killing him is hardly the action of an innocent accused, and evidence of such is probative of guilt." *See Williams v. State,* 2006 WL 1330983, at *4 (Tex. App.—Houston [1st Dist.] May 11, 2006, no pet.) (quoting *Schexnider v. State,* 943 S.W.2d 194, 202 (Tex. App.—Beaumont 1997, no pet.)) (holding that evidence that defendant dismembered victim's corpse and attempted to conceal his crime was admissible to show "consciousness of guilt").

Appellant's lying to police officers also shows a consciousness of guilt and may be considered as circumstantial evidence of guilt. *See King v. State*, 29 S.W.3d

556, 565 (Tex. Crim. App. 2000) (holding that making false statements to cover up crime is evidence indicating consciousness of guilt and is admissible to prove commission of offense); *Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.) (holding that conduct after crime indicating defendant's consciousness of guilt is "one of the strongest kinds of evidence of guilt").

During appellant's interview with police he was inconsistent with his story; he first told the police he had never met Roy and then later confessed that he was present at the time of the murder and helped move and conceal the body. Thus, appellant's lying and then confessing to moving Roy's body constitutes evidence of appellant's "consciousness of guilt" with respect to Roy's murder.

The forensic evidence also provided evidentiary support for appellant's conviction. Despite appellant's denial that he shot Roy, and his contention that he was "merely present," ballistics evidence showed that Roy was shot by two different guns. One of the bullets came from a .32 caliber gun, which is consistent with appellant's gun. Photographs from appellant's phone show appellant with a .32 caliber revolver; it was the gun that appellant had taken the most pictures of over the course of a year or more. The jury could have reasonably inferred that appellant was shot by two different guns, i.e., two different people. The jury could have also reasonably inferred that the appellant used his own gun to shoot Roy. Appellant admitted to being present at the time that Roy was murdered and to being a party to

the concealment of the body. And, Anthony Salinas testified that when appellant came to his house to hide the guns, he admitted to Salinas that he shot Roy first.

Having viewed the evidence in the light most favorable to the verdict, we hold that the evidence is sufficient to support appellant's conviction. The jury found from the circumstantial evidence, forensic evidence, appellant's participating in the robbery and cover up of the murder, and appellant's inculpatory statements, that appellant was guilty of the murder. "This was not a determination so outrageous that no rational trier of fact could agree." *Wirth v. State,* 361 S.W.3d 694, 698 (Tex. Crim. App. 2012).

We overrule appellant's first issue.

## MOTION TO SUPPRESS EVIDENCE

In his second issue on appeal, appellant contends the trial court erred in denying his motion to suppress the evidence recovered after the search, which was done pursuant to a warrant, of his cell phone. Specifically, we address the issue defense counsel raised at trial: Whether the State's warrant was an overbroad, impermissible "general" warrant.[1]

---

[1]     On appeal, appellant argues: "Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple— get a warrant. Anything obtained after the revocation of consent must have been suppressed."  However, it is clear from the trial court record, the State's brief, and the trial court's findings of fact and conclusions of law that a warrant *was* obtained before the police searched appellant's cell phone.  Thus, this Court could consider issue two waived because appellate counsel does not provide any argument or

13

*Standard of Review*

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018). We review the trial court's factual findings for an abuse of discretion, but we review the trial court's application of the law to the facts de novo. *Id.* at 190. We give deference to the trial court's factual determinations because the trial court is the sole trier of fact and judge of witness credibility and the weight to be given their testimony. *Id.*; *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). Our deferential review also applies to the trial court's conclusions regarding mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review de novo purely legal questions, as well as mixed questions of law and fact that do not turn on credibility and demeanor. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011).

When reviewing a magistrate's decision to issue a warrant, appellate courts apply a highly-deferential standard of review because of the constitutional preference for searches conducted pursuant to a warrant over warrantless searches. *State v. McLain*, 337 S.W.3d 268, 271–72 (Tex. Crim. App. 2011). When ruling on a motion to suppress evidence obtained pursuant to a search warrant, a trial court is

---

analysis of the issue addressed below, i.e., whether the warrant was valid. *See* TEX. R. APP. P. 38.1(i). However, in the interest of justice, we will address the issue considered by the trial court below regarding the validity of the search warrant.

14

limited to the four corners of the warrant and affidavit supporting the warrant. *Id.* at 271. The affidavit is interpreted in a non-technical, commonsense manner drawing reasonable inferences solely from the facts and circumstances contained within the four corners of the affidavit. *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013). "When in doubt, we defer to all reasonable inferences that the magistrate could have made" that are supported by the record. *Id.*; *see also Barrett v. State*, 367 S.W.3d 919, 922 (Tex. App.—Amarillo 2012, no pet.) (citing *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007)).

When, as here, the trial court makes explicit findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports the findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Lerma*, 543 S.W.3d at 190; *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014).

***Applicable Law Regarding Search Warrants and Cell Phones***

The Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the

place to be searched, and the persons or things to be seized." *See* U.S. CONST. amend. IV. "Probable cause exists when, under the totality of circumstances, there is a fair probability or substantial chance that contraband or evidence of a crime will be found at the specified location." *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013). Appellant does not assert that the magistrate lacked probable cause to issue the search warrant, only that the warrant, as issued, was too broad.[2]

Under the Fourth Amendment, law enforcement may not embark on "a general, evidence-gathering search, especially of a cell phone which contains 'much more personal information . . . than could ever fit in a wallet, address book, briefcase, or any of the other traditional containers'" for the storage of personal information. *State v. Granville*, 423 S.W.3d 399, 412 (Tex. Crim. App. 2014) (quoting *United States v. Wurie*, 728 F.3d 1, 9 (1st Cir. 2013)); *Butler v. State*, 459 S.W.3d 595, 601 n. 3 (Tex. Crim. App. 2015) (acknowledging that both United States Supreme Court and Texas Court of Criminal Appeals have recognized that cell phone users have

---

[2]  Although the issue of probable cause was raised in the trial court, it does not appear to be an issue here.  The trial court's conclusion of law on that issue, which is not challenged on appeal, is as follows:

> Here the evidence is overwhelming concerning probable cause.  The Defendant (a) led police to a body in a location that would only be known to persons involved in the crime; (b) described the manner of death as was confirmed by an autopsy; (c) explained that the Deceased's guns were taken and that the Defendant took photographs of the guns on his cell phone in preparation for a sale of the guns; and (d) stated that there still might be conversations between the Defendant and Taylor concerning the stolen guns.

16

reasonable expectation of privacy in content of their cell phones). *See Riley v. California*, 573 U.S. 373 (2014) (holding that, except in exceptional circumstances, police may not search digital content of cell phone without first getting search warrant). Accordingly, a post-arrest search of a cell phone that is stored in a property room requires a warrant; *Granville*, 423 S.W.3d at 417, which was obtained in this case.

To comply with the Fourth Amendment, a search warrant must describe the things to be seized with sufficient particularity to avoid the possibility of a general search. *Thacker v. State*, 889 S.W.2d 380, 389 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). *See* TEX. CODE CRIM. PROC. art. 18.01(c). The Fourth Amendment's particularity requirement prevents general searches, while at the same time assuring the individual whose property is being seized and searched of both the lawful authority and limits of the search itself. *Groh v. Ramirez*, 540 U.S. 551, 561 (2004). "The constitutional objectives of requiring a 'particular' description of the place to be searched include: 1) ensuring that the officer searches the right place; 2) confirming that probable cause is, in fact, established for the place described in the warrant; 3) limiting the officer's discretion and narrowing the scope of his search; 4) minimizing the danger of mistakenly searching the person or property of an innocent bystander or property owner; and 5) informing the owner of the officer's

17

authority to search that specific location." *Long v. State*, 132 S.W.3d 443, 447 (Tex. Crim. App. 2004).

To meet those objectives, the particularity requirement may be satisfied through the express incorporation or cross-referencing of a supporting affidavit that describes the items to be seized, even though the search warrant contains no such description. *See United States v. Richards*, 659 F.3d 527, 537 (6th Cir. 2011); *see also United States v. Triplett*, 684 F.3d 500, 505 (5th Cir. 2012) (noting that law permits affidavit incorporated by reference to amplify particularity required in search warrant by Fourth Amendment). The degree of specificity required is flexible and will vary according to the crime being investigated, the item being searched, and the types of items being sought. *Richards*, 659 F.3d at 537.

The items to be seized must be described with sufficient particularity such that the executing officer is not left with any discretion to decide what items may be seized. *Thacker*, 889 S.W.2d at 389. However, "the requirements for the particularity of the description of an item may vary according to the nature of the thing being seized"; *id.* (citing *Gonzales v. State*, 577 S.W.2d 226 (Tex. Crim. App. 1979)); and, "[w]hen the circumstances of the crime make an exact description of the instrumentalities of a crime a virtual impossibility, the searching officer can only be expected to describe the generic class of items he wishes to seize." *Id.*

With these guidelines in mind, a warrant and supporting affidavit satisfies the Fourth Amendment when it recites facts sufficient to show (1) that a specific offense has been committed, (2) that the property or items to be searched for or seized constitute or contain evidence of the offense or evidence that a particular person committed it, and (3) that the evidence sought is located at or within the thing to be searched. *Sims v. State*, 526 S.W.3d 638, 645 (Tex. App. —Texarkana 2017, no pet.) (reviewing cell phone warrant); *see* TEX. CODE CRIM. PROC. art. 18.01(c). The recited facts in the affidavit must be "sufficient to justify a conclusion that the object of the search is probably [within the scope of the requested search] at the time the warrant is issued." *State v. Delagarza*, 158 S.W.3d 25, 26 (Tex. App.—Austin 2005, no pet.).

Regarding computers and other electronic devices, such as cell phones, "case law requires that warrants . . . affirmatively limit the search to evidence of specific [] crimes or specific types of materials." *United States v. Burgess*, 576 F.3d 1078, 1091 (10th Cir. 2009). If a warrant permits a search of all computer records without description or limitation, it will not meet Fourth Amendment particularity requirements. *Id.* However, a search of "computer records" that is limited to those related to the offense set forth in the affidavit is appropriately limited. *See id.*

19

### The Warrant and Supporting Affidavit

Here, the warrant expressly included the supporting affidavit by reference.

The supporting affidavit described the place to be searched as:

A blue in color, Microsoft Lumia (Cricket) phone, Model # RM-1073, IME #357815061300596 located at the Lake Jackson Police Department Evidence Room located at 5 Oak Dr., Lake Jackson, Brazoria County, Texas.

The supporting affidavit described the evidence to be seized as follows:

- Any and all stored contact information including, but not limited to telephone numbers, email addresses, physical addresses, directories or contact information accessible from the suspected item;
- Any and all social media contacts, information or correspondence;
- Any logs of incoming/outgoing phone calls or text messages;
- Any and all digital media stored on or accessible from the suspected item, including but not limited to photos, videos or audio recordings;
- Any and all email correspondence stored on or accessible from the suspected item including, but not limited to, sent, received, undelivered or saved messages;
- Any and all application data;
- Any and all Global Position System (GPS) records;
- Any and all navigation history, searches, or information;
- Any and all data tending to show the identity of the owner or the primary user of the suspected item;
- Any and all data tending to show the identity of any social media account or application install on the suspected [item];
- Any and all other digital data;
- Any and all deleted digital data;
- Any social media applications, social media storage devices or remote storage service accessible through data store within the suspected item.

*Cases Regarding Particularity Requirement in Cell Phone Warrants*

*Riley v. California* holds that, except in exceptional circumstances, police may not search the digital content of a cell phone without first getting a search warrant. 573 U.S. 373. *Riley* does not discuss the particularity required by such a warrant. We have, however, found several cases that are instructive.

In *Roberts v. State*, the defendant was arrested and charged with aggravated sexual assault. Nos. 07-16-165-CR and 07-16-166-CR, 2018 WL 1247590, at *1 (Tex. App.—Amarillo Mar. 9, 2018, pet. ref'd) (mem. op., not designated for pub.), A search warrant seeking permission to "search for, seize, [and] conduct a forensic analysis" of his cell phone was sought and obtained. *Id.* The warrant "did not otherwise limit the nature and scope of the search to be conducted," but the supporting affidavit linked the cell phone to the charged crime by showing (1) that it was in the defendant's car when he was stopped with the victim still inside, (2) the victim stated that appellant had called her and invited her to a club, and, after they left the club in his car, he sexually assaulted her, and (3) the victim's grandmother told police that someone had been contacting the victim through Facebook, leaving a phone number for appellant's girlfriend, and offering to pay the victim to "leave this alone." *Id.* at *2–3.

On appeal in *Roberts*, the defendant alleged that the warrant was overbroad because it authorized a general exploratory search of his cell phone. The court of

appeals disagreed, noting that "[the detective] established a nexus between the item to be searched (the cell phone) and the offenses being investigated by stating that [the defendant] had contacted (the victim) on his cell phone and invited her to go to a club." *Id*. at *6. The court of appeals further stated:

> A search warrant does not violate the requirement of being "sufficiently particular" merely because its execution might incidentally lead to the discovery of non-offense related evidence. Here, although the general object of the warrant (a "forensic analysis" of the electronic data stored on Appellant's cell phone) tacitly encompasses electronic data that might, upon a thorough forensic examination, be identified as being non-offense related, the accompanying affidavit limits the search protocol to evidence of specific crimes described in detail in the affidavit. Accordingly, when the warrant and the affidavit are construed together, the warrant does not allow an unfettered and unlimited search of Appellant's cell phone.
>
> The focused nature of the forensic examination is further reinforced by Detective Martin's testimony indicating that his search methods were reasonably directed toward discovering evidence of the offense itself. Accordingly, we find that the warrant augmented by the affidavit met the particularity requirements of the Fourth Amendment and the search was reasonable.

*Id.*

In contrast, in *U.S. v. Oglesby*, the defendant was arrested during a vehicle-burglary investigation and a cell phone was recovered from the seat of his vehicle. No. 4:18-CR-0626, 2019 WL 1877228, at*1 (S.D. Tex. Apr. 26, 2019). The police obtained a warrant and searched the cell phone, finding evidence that appellant, a felon, had been in possession of a firearm. *Id.* He was then charged as a felon-in-possession of a firearm. *Id.* Oglesby moved to suppress evidence recovered from

22

the cell phone, arguing, among other things, that the warrant upon which it was based

"was fatally overbroad because it authorized a search of virtually every category of

data that a cell phone could contain, without limiting the search by date or data that

could contain the evidence sought." *Id.* at 7. The district court noted that items in

an "all records" warrant "must be sufficiently linked to the alleged criminal activity

so as to distinguish them from innocent personal materials." *Id.* at *8 (quoting *U.S.

v. Humphrey*, 104 F.3d 65, 69 (5th Cir. 1997)). The district court concluded that the

warrant was overbroad, stating:

> The warrant in [*Oglesby*] cannot meet this standard. Nothing about
> vehicle burglary is "sufficiently linked" to the various categories of data
> described in the warrant. Certainly, no connection is explicated in the
> affidavit or the warrant. The conduct described in the affidavit does not
> inherently implicate the use of a cell phone. The Court finds it unlikely
> that anyone would have to Google "how to break into a car" to come
> up with the idea to smash a rear window. Without the post-search
> testimony that Mr. Oglesby had a co-conspirator with him when he was
> arrested, there is no indication that he would need to communicate with
> anyone to coordinate the burglary. Neither did the affidavit suggest that
> individuals stealing firearms often sell those firearms by contacting
> fences through their cell phones or social media accounts.

*Id.* at *9.

*Analysis*

The present case is like *Roberts*, not *Oglesby*, because the warrant and

supporting affidavit directly linked the evidence being sought to the offense being

investigated at the time the warrant was obtained. The trial court found, and the

record supports, that

23

[i]n this case the Affidavit and Warrant were to search Defendant's cell phone. The Affidavit revealed that the Defendant had personal knowledge of a murder and robbery of the Deceased. The Defendant admitted to hav[ing] taken pictures of the guns taken from the Deceased on Defendant's cell phone and there were still conversations between the Defendant and Taylor concerning the stolen guns. A sufficient nexus was established between the cell phone to be searched and the specified offenses the Affiant was investigating. Given these facts, and interpreting the Affidavit within its four corners in a common sense fashion, the Magistrate had a substantial basis for finding probable cause that evidence concerning the offenses being investigated was on the cell phone, *State v. McClain*, 337 S.W.3d 268 (Tex. Crim. App. 2011) and that the search of Defendant's cell phone was not a general search.

Nevertheless, appellant argues that the warrant is overbroad because it authorized a search of his phone for "any and all other digital data" and "any and all deleted digital data." We disagree.

In *United States v. Woods*, the warrant authorized "a search of the data contained in the cell phones, including but not limited to, 'photographs, videos, call logs, address books, text messages, messages, notes, saved web addresse[s], GPS data, saved or visited locations, audio recordings, identifying numbers, and other electronic data." No. 18-cr-0153, 2108 WL 7253603, at *7 (D. Minn. Nov. 16, 2018). The district court noted that "[t]hese categories of information are similar to the ones described in the [supporting] affidavit as likely to contain evidence of [the offense being investigated." *Id.* The court noted that any ambiguity caused by the phrase "including but not limited to" was cured by the warrants' list of examples of the type of data that could be seized. *Id.* (citing *U.S. v. Riley*, 906 F.2d 841, 844

24

(2nd Cir. 1990)); *see also U.S. v. Bass*, 785 F.3d 1043, 1049–50 (6th Cir. 2015) (holding warrant authorizing search for fraudulent conduct relating to fraud and identity theft on cell phone not overbroad even though "unclear to the particular format in which the evidence existed."); *U.S. v. Triplett*, 684 F.3d 500, 505 (5th Cir. 2012) (holding that warrant authorizing seizure of "electronic devices" and "electronic memory devices" not overbroad and concluding that "[b]ased on this nexus between the facts and circumstances and the items to be seized . . . a reasonably well-trained officer could have concluded that the warrant satisfied Fourth Amendment particularity.").

Here, the nexus between the facts and circumstances of the investigation and the items to be seized was unquestionably present. Appellant himself told the officers that photographs and text messages relating to the offense under investigation were on his cell phone. Thus, the officers had reason to believe that evidence relating to their investigation would be found on appellant's cell phone. Indeed, the type of evidence seized from appellant's phone and introduced against him at trial—pictures and texts relating to the offense set forth in the affidavit—was not only specifically listed in the affidavit, it was exactly the type of evidence appellant told officers would be there. As such, the trial court did not err in concluding that "the search of [Appellant's] cell phone was not [an overbroad] general search."

We overrule appellant's second issue.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).